UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**FAYEZ A. SHANAA** and
**HAIM A. DAKWAR,**
**D/B/A MR. F'S FOODS**

   Plaintiff,

v.                                                                                Case No. 15-CV-42

**UNITED STATES OF AMERICA,**

   Defendant.

---

### DECISION AND ORDER ON DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

---

      Plaintiff, Mr. F's Foods, brought this action for judicial review of the Food and Nutrition Service's ("FNS") final agency decision to permanently disqualify Plaintiff from participation in the Supplemental Nutrition Assistance Program ("SNAP" or "Program"). Defendant filed a motion for summary judgment on September 12, 2016. (Docket # 24.) To date, Plaintiff has not filed a response. Because the time to file a response has long since passed, I will consider the motion fully briefed and decide it on the present record. For the reasons explained below, Defendant's motion for summary judgment is granted.

### BACKGROUND

*1.    Regulatory Background*

      In 1964, Congress established the "Food Stamp Program" for low-income individuals. *Fells v. United States*, 627 F.3d 1250, 1252 (7th Cir. 2010) (citing 7 U.S.C § 2011). In 1996, Congress set a deadline for states to replace the paper coupons that were used for Food Stamps with Electronic Benefit Transfer ("EBT") systems, "which use debit-

type cards to deduct benefits from a central location." *Fells*, 627 F.3d at 1252. In 2008, Congress changed the name of the program to the Supplemental Nutrition Assistance Program. *Id*. (internal citation omitted). The Program is administered by the FNS division of the United States Department of Agriculture ("USDA"). (Def.'s Undisputed Facts ¶ 2, Docket # 27.) Retail stores must comply with certain regulations to be a participant in the Program. *Fells*, 627 F.3d at 1252; 7 U.S.C. § 2021(a)(1). The USDA has the authority to disqualify a retail store for certain offenses including trafficking food stamps, or exchanging food stamp benefits for cash or something other than eligible food. *Fells*, 627 F.3d at 1252 (internal citations omitted).

*2.    Factual Background*

Mr. F's Foods is a convenience store owned by Fayez A. Shanaa and Haim A. Dakwari located at 3246 N. 15th St. in Milwaukee, Wisconsin. (Docket # 27 ¶ 1.) Mr. F's Foods was an authorized participant in the Program. (*Id*. ¶ 3.) The Program provides monthly benefits to qualifying households through the use of EBT cards. (*Id*. ¶¶ 5-6.) The EBT card essentially functions as a debit card, where a customer would swipe to make purchases and enter a personal identification number. ("PIN") (*Id*. ¶ 7.) Mr. F's Foods is also a participant in the Women, Infant, and Children ("WIC") program. (*See Id*. ¶ 67.) The WIC program distributes paper checks to eligible enrollees that can be used to purchase specific food items. (*Id*.)

FNS opened an investigation of Mr. F's Foods after receiving notifications of unusual EBT transactions from its Anti-Fraud Locator using Electronic Benefits Retailer Transactions ("ALERT") computer program. (*Id*. ¶¶ 9-12.) The investigation ran from February 2014 through April 2014 ("Review Period"). (*Id*. ¶ 13.) During the investigation,

FNS identified "(1) rapid and repetitive transactions within short time frames by the same EBT customer; (2) a high number of excessively large dollar transactions; and (3) excessively large purchases by a single EBT customer." (*Id.*) For example, FNS identified 20 sets of EBT transactions conducted in less than 24 hours. (*Id.* ¶ 14.)

Furthermore, FNS identified 109 transactions for over $28.50 during the Review Period, an amount considered to be "excessively large" when compared to the average Wisconsin convenience store transaction of $7.31. (*Id.* ¶¶ 17-18.) FNS also conducted a comparison study of the 67 stores located within one mile of Mr. F's Foods. (*Id.* ¶¶ 19-20.) Of the stores in the comparison study, Mr. F's Foods had the highest revenue, totalling $33,670. (*Id.* ¶ 22.)

FNS selected and compared the "shopping habits" of four EBT customers who shopped at Mr. F's Foods during the Review Period. (*Id.* ¶ 24.) FNS found that while all four SNAP customers shopped at larger stores with more inventory, they made large purchases at Mr. F's Foods. (*Id.* ¶ 25.) For example, one customer, identified as Household 3637, spent 77 percent of their SNAP benefits at Mr. F's Food during the Review Period despite living approximately 8.7 miles away. (*Id.* ¶¶ 26-27.) Household 3637 only made two other transactions during the 89-day Review Period—one at Aldi for $129 and one at Holyland Grocery and Deli for $200. (*Id.* ¶ 30.)

Moreover, FNS identified Household 6338, a customer who spent 72 percent of their SNAP benefits and conducted 14 out of 15 total transactions at Mr. F's Foods during the Review Period. (*Id.* ¶ 32-33.) The only transaction not completed at Mr. F's Foods was a purchase at Sam's Club for $188. (*Id.* ¶ 33.) Additionally, Household 6338 conducted four transactions on February 6, three on February 7, two on March 13, and three on March 14.

(*Id.* ¶ 34.) Next, FNS identified Household 9501 who made six out of 10 total EBT transactions at Mr. F's Foods during the Review Period. (*Id.* ¶ 36.) The other four transactions took place at two different Wal-Marts. (*Id.* ¶ 37.) Lastly, FNS tracked Household 5190, a customer who made three EBT transactions for a total of $135 in one day. (*Id.* ¶ 39.)

In April 2014, an FNS independent contractor conducted a store inspection of Mr. F's Foods. (*Id.* ¶ 40.) During the inspection, the FNS Contractor took photographs, observed inventory, pricing, and general store capabilities. (*Id.*) Among the FNS Contractor's observations, he noted that Mr. F's Foods contained no optical scanners, no conveyor belts, and no shopping carts to accommodate large purchases. (*Id.* ¶¶ 41-42) The FNS Contractor noted that owner Fayez Shanaa "primarily works the store himself" and the highest profits in the store were from alcohol, tobacco, and soda sales. (*Id.* ¶¶ 44-45.) Also, because Mr. F's Foods buys goods from other stores for resale, its prices are generally more expensive than its competitors. (*Id.* ¶¶ 46-48.)

On July 24, 2014, FNS delivered a letter charging Mr. F's Foods with trafficking SNAP benefits. (*Id.* ¶ 52.) Mr. F's Foods responded to the Charge Letter stating that most of the large transactions involved baby formula purchases. (*Id.* ¶¶ 51-52.) After receiving receipts produced by Shanaa, FNS calculated that Mr. F's Foods purchased 41 cans of baby formula per month (or 9.5 cans per week) during the Review Period. (*Id.* ¶¶ 53-54.) As a participant in the WIC program, Mr. F's Foods asserted that most customers bought baby formula through the WIC program and not SNAP. (*Id.* ¶ 55.) As of 2013, Mr. F's Foods averaged $33,943 in WIC redemptions per year averaging out to $2,828 per month. (*Id.* ¶ 56.)

FNS collected EBT data on baby formula purchases for each month of the Review Period. (*Id.* ¶¶ 57-59.) The February 2014 EBT data showed that 31 cans of baby formula were bought by SNAP customers in the following prices: "one pack of six (6) for $110.94; one pack of four (4) for $73.96 and seven packs of three (21) for $55.47." (*Id.* ¶ 57.) Further, in March 2014, 32 cans of baby formula were bought for: one pack of six (6) for $110.94; five packs of four (20) for $73.96 and two packs of three (6) for $55.47. (*Id.* ¶ 58.) In April 2014, 37 cans of baby formula were sold to SNAP users for: "two packs of six (12) for $110.94; four packs of four (16) for $73.96 and three packs of three (9) for $55.47. (*Id.* ¶ 59.)

In September 2014, FNS informed Mr. F's Foods that it was not eligible for a civil penalty because it did not provide evidence that it implemented an effective program to prevent SNAP violations. (*Id.* ¶¶ 60-61.) FNS also notified Mr. F's Foods that it was permanently disqualified from the Program. (*Id.* ¶ 62.) Subsequently, Mr. F's Foods submitted a written request for administrative review of the decision. (*Id.*) On October 30, 2014, Mr. F's Foods delivered an accounting book to FNS that tracked the payments made for food stamp and WIC purchases. (*Id.* ¶ 64.) On December 11, 2014, FNS issued its final agency decision concluding that there was evidence supporting Mr. F's Foods being disqualified from the Program. (*Id.* ¶ 65.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is required where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some

factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, I must draw all inferences in a light most favorable to the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the non-moving party is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on its pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

A district reviews *de novo* an administrative finding that a retailer has committed an EBT trafficking violation. *McGlory v. United States*, 763 F.2d 309, 311 (7th Cir. 1985) (per curiam). The court reviews the record before the court, not the record that was before the agency. *Id.* ("The record in the district court, not the record before the agency, is what counts.") The plaintiff "bears 'the burden of proving, by a preponderance of the evidence, that the agency's determination was invalid.'" *Tony's Pantry Mart Inc. v. United States*, No. 15-C-2967, 2017 WL 51484 at *4 (N.D. Ill. Feb. 8, 2017) (quoting *Fells*, 627 F.3d at 1253). If

6

the Court finds that there was a trafficking violation, the penalty given by FNS can be overturned only if it is arbitrary and capricious. *McGlory*, 763 F.2d at 311.

"When determining whether a store owner has trafficked in food stamps, the agency may rely on 'facts established through on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an EBT transfer system.'" *Fells*, 627 F.3d at 1252-53 (quoting 7 U.S.C. § 2021(a)(2)). Federal courts routinely uphold FNS's permanent disqualifications based on suspicious EBT transaction data. *Tony's Pantry Mart Inc.*, 2017 WL 514184 at *4 (citing *Young Choi Inc. v. U.S.*, 639 F.Supp.2d 1169, 1179 (D. Haw. 2009)) ("The law is clear that FNS may base its finding of a violation on analysis of EBT transaction reports or on-site store surveys."). In order to defeat summary judgment, the plaintiff cannot rely on "general statements about customer's shopping patterns or other customer practices . . . ." *Tony's Pantry Mart Inc.*, 2017 WL 514184 at *5.

In this case, FNS determined that Mr. F's Foods committed fraud based on a number of factors. First, FNS determined that Mr. F's Foods' "rapid and repetitive transactions" were evidence of fraud. (Def.'s Mot. for Summ. J. at 11-12, Docket # 29.) Specifically, FNS identified 20 sets of EBT transactions which were done in less than 24 hours for a total of $2,745.21 in SNAP benefits. (*Id.* at 11.) FNS argues that conducting multiple transactions within 24 hours is a strategy used to avoid "detection of single high dollar transactions that cannot be supported by the retailer's inventory and structure." (*Id.* at 12.)

Next, FNS determined that Mr. F's Foods committed fraud based on the excessive numbers of large dollar purchases. (*Id.*) FNS identified over 100 EBT transactions during the Review Period for an amount in excess of $28.50, totalling $5,568.77. (*Id.*) FNS asserts

7

that these transaction amounts are inconsistent with the store's inventory which is predominately comprised of "low value food items." (*Id.*) This determination is magnified when comparing Mr. F's Foods to the 67 surrounding stores, 21 of them considered "larger and better stocked." (*Id.* at 13.) Additionally, FNS did a study comparing Mr. F's Foods with five stores within a one-mile radius and found that Mr. F's Foods had the most EBT transactions and the largest dollar volume. (*Id.*)

In addition, FNS identified frequent transactions that "clustered around identifiable numbers." (*Id.*) For example, FNS noted four purchases for $110.95, nine purchases for $73.96, three purchases for $55.47, and one for $23.99. (*Id.*) Although Mr. F's Foods produced receipts detailing these purchases (*id.*), the receipts did not match the EBT data tracked by FNS during the Review Period (*Id.* at 13-14). FNS argues that the receipts Mr. F's Foods provided were insufficient considering that its inventory of baby formula was small and there are stores nearby that are larger and have cheaper prices. (*Id.* at 14.) Further, the receipts Mr. F's Foods provided indicated that the store purchased approximately 123 cans for resale during the Review Period. (*Id.* at 15.) However, Mr. F's Foods submitted WIC paper checks for reimbursement of 245 cans of baby formula sold over that same period. (*Id.*) When adding the 100 cans of baby formula Mr. F's Foods asserts that they sold to SNAP customers, there are 222 cans of formula unaccounted for. (*Id.*)

Lastly, FNS determined that a study comparing household shopping indicated that Mr. F's Foods was engaged in trafficking. (*Id.* at 16.) FNS studied the shopping patterns of four EBT customers. (Docket # 27 ¶ 3.) One customer, Household 3637, spent 77 percent of his SNAP benefits at Mr. F's Foods despite living 8.7 miles away from Mr. F's Foods and much closer to larger stores with better prices. (Docket # 29 at 16.) Also, Household 6338

8

spent 72 percent of their SNAP benefits at Mr. F's Foods and conducted multiple transactions in single days. (*Id*.) Household 9501 conducted six transactions at Mr. F's Foods spending $200.71 in four days. (*Id*. at 17.) Finally, Household 5190 conducted three EBT transactions in one day spending $135. (*Id*.)

Viewing this evidence and all reasonable inferences in Mr. F's Foods' favor, there exists no genuine factual disputes for trial. *See Young Choi*, 639 F. Supp. 2d at 1178. Again, Mr. F's Foods has not responded to Defendant's motion for summary judgment. Even considering the receipts that Mr. F's Foods provided to the administrative review officer, there are no genuine factual disputes for trial. *Tony's Pantry Mart Inc.*, 2017 WL 514184 at *5 (stating that in order to defeat summary judgment, the plaintiff cannot rely on "general statements about customer's shopping patterns or other customer practices . . . .") FNS is allowed to base a violation on EBT data and on-site inspections. *Id*. at *4. Accordingly, Mr. F's Foods has failed to present specific evidence raising a genuine dispute for trial regarding the patterns of suspicious activity to defeat summary judgment.

Similarly, Mr. F's Foods has not presented a genuine issue of material fact regarding FNS's decision to permanently disqualify it from the Program. "Permanent disqualification from the SNAP program is mandated when an authorized retail store has engaged in trafficking." *Tony's Pantry Mart*, 2017 WL 514184 at *7 (citing 7 U.S.C. § 2021(b)(3)(B)). A federal court can overturn FNS's penalty only if it is arbitrary and capricious. *See Estremera v. U.S.*, 442 F.3d 580, 585 (7th Cir. 2006). Because FNS properly relied on the regulatory requirements, its decision was not arbitrary or capricious and Mr. F's Foods has not presented evidence that shows otherwise.

## CONCLUSION

For the reasons explained above, FNS's motion for summary judgment is granted.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that defendant's motion for summary judgment (Docket # 24 ) is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated this 30th day of June, 2017.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge